UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

AMERICAN CASUALTY COMPANY OF
READING, PA,

    Plaintiff,

vs.

                                            Case No.: 3:03-cv-964-J-25MMH

FIRST PROFESSIONAL INSURANCE
COMPANY, etc.,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court on the parties' cross Motions for Summary Judgment (Dkts. 56 and 61). First Professional Insurance Company's Motion for Partial Judgment on the Pleadings, docketed as a Motion for Summary Judgment (Dkt. 21), is **MOOT**.

### Background

This is an insurance coverage dispute. American Casualty Company of Reading, PA (American) seeks reimbursement from First Professional Insurance Company (First) for amounts that First allegedly should have paid to settle separate medical malpractice claims brought against two nurses, Ms. Alice Bolton and Ms. Janice Houck-Daniel.

There is no question whether American insured the nurses. The question is whether First insured them. American argues that First was the nurses' primary insurer and it simply provided an excess policy. First contends that the policies in question provided coverage to the physicians who employed the nurses only; First claims that the policies provided the physicians with

1

coverage for vicarious liability claims in the event they were sued for the nurses' actions.

American's Motion argues that: (1) the plain language rule dictates a finding that First insured the nurses; (2) Florida estoppel and waiver case law requires a finding that First insured the nurses; (3) First cannot deny coverage after initially providing the nurses with representation because of the prejudicial effect of such withdrawal of coverage, and; (4) First cannot deny coverage after initially providing it because the nurses, especially Ms. Bolton, reasonably relied upon First to their detriment.

First's Motion argues that: (1) the policy in question clearly shows that the nurses were not additional insured persons; (2) American does not have standing to bring an estoppel claim; and (3) even if American does have standing to bring its claim it has not made out a prima facie estoppel case.

## Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reaching a summary judgment decision the court must view the facts in the light most favorable to the non-moving party. *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. Of America*, 894 F.2d 1555, 1558 (11th Cir. 1990). However, in order to avoid entry of summary judgment the non-moving party "may not rest upon the mere allegations or denials" of his pleadings; instead, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## Analysis

As a threshold issue, the Court must address whether American has standing to sue on behalf of the nurses. American argues that its policies expressly give it the contractual right to collect monies on behalf of the nurses. American also contends that an excess carrier stands in the shoes of the insured. *Galen Heath Care, Inc. v. Am. Cas. Co.*, 913 F. Supp. 1525, 1534 (M.D. Fla. 1996). Additionally, American maintains that claims against an insurer are assignable under Florida law; American argues that its estoppel claim is quasi-contractual, not a nonassignable "purely personal tort claim." *Forgione v. Dennis Pirtle Agency, Inc.*, 701 So.2d 557, 559 (Fla. 1997). This Court finds that the instant case does not involve a tort claim and thus American does have standing to sue on the nurses' behalf.

Next, the Court must decide whether the nurses' employers' policies with First covered them individually. According to First, the nurses' employers never applied for coverage on their behalf, never paid a premium for their personal coverage and thus the policies in question do not include endorsements designating the nurses as additional insureds. American notes that First initially provided coverage because *it thought* its policy covered Nurse Bolton.

Regarding this issue, First seems to argue that the nurses should have investigated further by reviewing the policy and/or speaking to First's representatives to confirm they were covered. Any argument that asserts that an individual working outside of the insurance industry should be able to interpret an insurance policy better than the company that wrote the policy does not comport with common sense. Further, the assertion that a phone call to First would have definitively cleared up any doubts on the issue also strains logic considering the fact that First misinterpreted *its own* policy. Even if the nurses did contact First, it is questionable whether they would have been told they lacked coverage under the policy. Presumably, it was a First employee

3

that initially determined the nurses *were* covered. Regardless, the Court's finding that First erroneously interpreted its own policy does not end the Court's inquiry; the Court must instead examine the policies' actual language to make the coverage determination. First contends the nurses are listed on the policies only to demonstrate that the *physicians* were covered for the nurses' acts.

To further its argument, First discusses the policies' language. First points out that page 3 of the policies,[1] under the section entitled "Professional Liability Protection," states that the policies' protection is for a "physician or surgeon."

Moreover, First notes that section B5 on the same page specifically excludes nurse practitioners. Regarding this language, American notes that the exclusion is of no consequence because Page 4, heading C5, states that a physician "may individually insure a....nurse practitioner as a designated employee on [his or her] policy." The Court agrees that First's argument regarding that particular language on page three lacks merit. First does proffer other policy language, however, to further its case.

First notes, for example, that the General Change Endorsement (Endorsement) form states that "this added charge is for you liability for" and then lists the name of the nurse practitioner. Thus, First's maintains that the Endorsement clearly explains that the dollar amount next to the nurses' names on the policies merely provides the doctors with vicarious liability coverage for the nurses' acts. Indeed, the dollar amount listed next to "employee charges" on one of the employer's policy's is a mere 72 dollars out of his $25,341 dollar total policy premium. It

---

[1] Evidently, the relevant language is identical in both policies. Thus, the court will discuss the two policies as one.

4

appears that the physicians were charged very little for "employee charges," bolstering First's contention that it is clear the nurses were not individually covered.

Regardless, American argues that, at the very least, the policies were ambiguous regarding the question of whether the nurses were covered. American maintains that if there are two reasonable interpretations regarding whether the policy covered the nurses, the ambiguity is resolved in favor of the nurses under Florida law. *State Farm Fire & Cas. Co. V. CTC Dev. Corp.*, 720 So. 2d 1076 (Fla. 1998)   American also points to several of the policies' provisions to bolster its case. American first points to the policies' language and asserts that the plain language of the policies demonstrate that the nurses were individually covered. American notes that under the "Summary of Coverage" section, the policy states that a "Premium is charged for the employees listed on the continuing page;" the nurses are in fact listed on that continuing page. American also points out that the policy's first page states that the Certificate Confirmation Form (Certificate) at issue "tell(s) you who is protected...." Because the nurses are listed on the Certificate, American argues *they* are "protected;" American contends that this language, at least arguably, means that the nurses are *individually* insured.

First, however, maintains that the above quoted language simply identifies the doctors' employees for whom the doctors have vicarious liability coverage. Indeed, the only person listed on the "protected person" line is the physician. The nurses' names are not listed anywhere near the term "protected person."

American also points out that the nurses and the physicians' professional associations are treated the same on the Certificate; because First deems the associations covered, American maintains that the nurses must also be covered. First, however, argues that the reason the

5

professional associations are covered is because the policies specifically provide for their coverage. Indeed, paragraph B.4. states the policy covers "for damages resulting from: Your service as a member of a partnership, corporation, or professional association..." Thus, American's argument regarding this issue lacks merit.

While the court agrees that certain phrases and words in the policy- standing alone or in conjunction with other phrases and words that American has picked out- could bolster a finding that the extent of the nurses' coverage is not clear, this Court finds that American's interpretation of the policies *in context* is simply unreasonable. Because the Court finds for First on this issue it need not discuss First's other contractual interpretation arguments.[2] The remaining issue[3] is whether promissory estoppel can be alleged to provide coverage for either or both nurses; the Court must decide if First lawfully withdrew representation of the nurse(s) after initially providing it.[4] The general rule is that insurance coverage cannot be created by waiver or estoppel. *Florida Municipal Insurance Trust v. Village of Golf*, 850 So.2d 544, 546 (Fla. 4th DCA 2003).

---

[2] First also argues that the physicians that employed the nurses failed to follow the procedure laid out in First's underwriting manual for adding insureds to the policies at issue. According to First, adding a nurse practitioner involves submitting a questionnaire and paying an extra premium. After the process is complete, First issues a "designated employee" endorsement. First fails to cite to any evidence regarding this procedure. American argues that First's undisclosed underwriting procedure is irrelevant and even if it wasn't First would have had to communicate the procedure to its insured.

First does note that one of the physicians had previously insured one of his physician assistants and thus supposedly knew the procedure to do this. However, American notes that this transpired nearly twenty years ago and also points out that the underwriting procedures could have changed during the elapsed time. The Court need not reach these arguments because it finds for First on the coverage issue for other reasons.

[3] First also argues that an estoppel claim is not assignable but fails to cite any on point authority for this proposition.

[4] It is not clear whether First initially provided representation to Ms. Houck-Daniel.

6

American cites *Doe v. Allstate Insurance Company* for the proposition that coverage by estoppel is created when an insured has been prejudiced by the insurer's assumption of the insured's defense. 653 So.2d 371, 373 (Fla. 1995) Regarding Ms. Bolton, evidently First provided her with coverage for more than three years until "on the eve of trial and amidst pending settlement negotiations" First withdrew coverage.

American argues that Nurse Bolton was prejudiced in the following ways: (1) she had to appear before a judge to prevent the attorney that First hired- Mr. Fogelman- from withdrawing from her case; (2) the limits of her American policy have been "unnecessarily eroded;" (3) First's assumption of Ms. Bolton's defense dissuaded her other insurers[5] from settling earlier and for a lower amount, and; (4) First directed a defense strategy that resulted in dismissal of the claim against her employer, Dr. Lose, which raised Ms. Bolton's profile as a target.

While American seems to make a persuasive argument, a review of the evidence demonstrates that American has failed to show a level of prejudice sufficient to state a legally cognizable estoppel claim.

First proffers evidence that Dr. Lose's exposure was reduced simply because the claims against him were untimely; attorney Fogelman would have filed a motion to dismiss Dr. Lose from the case regardless of whether it assumed Ms. Bolton's defense. First provides the state court Order showing that Dr. Lose was dismissed from the case because the statute of limitations on the claims against him had run.

Regarding any missed settlement opportunities, First proffers case law holding that a missed settlement opportunity does not constitute prejudice under *Doe*. *Hessley v. Travelers*

---

[5] Evidently, she had at least one other policy.

7

*Idem. Co.*, 468 So. 2d 456 (Fla. 3rd DCA 1985). Also, First proffers evidence that the Plaintiff in the malpractice case had only made global settlement offers throughout the litigation. Fogelman Depo. p. 107. In addition, First notes that American also had attorneys representing Ms. Bolton and monitoring the case throughout the litigation. Regarding the policy limit erosion issue, clearly Ms. Bolton's policy limits would have been affected by the lawsuit even if First did not initially assume her defense. In sum, American has failed to offer sufficient evidence of prejudice. [6]

Regarding Ms. Houck-Daniel, American contends that First "led Ms. Houck-Daniel to believe the First would defend and indemnify her." First maintains that there can be no prejudice to Ms. Houck-Daniels because there never was a defense provided to her. Even assuming First did initially promise a defense, this does not constitute sufficient prejudice under *Doe*.

Summary judgment is granted in First's favor on American's claims.

Accordingly, it is **ORDERED**:

First's Motion for Partial Judgment on the Pleadings, docketed as a Motion for Summary Judgment (Dkt. 21) is **MOOT**. American's Oral Motion for Hearing... (Dkt.57) is **MOOT**. American's Motion for Summary Judgment (Dkt. 56) is **DENIED**. First's Motion for Summary Judgment (Dkt. 61) is **GRANTED** and the **CLERK** is **DIRECTED** to enter judgment in favor of First Professional Insurance Company and **CLOSE** this case.

**DONE AND ORDERED** in chambers this 22 day of April 2005.

HENRY LEE ADAMS, JR.
UNITED STATES DISTRICT JUDGE

---

[6] Similarly, American cannot show the requisite detriment to further a legally cognizable reasonable reliance claim.

Copies to: Counsel of Record